UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-174-JBC

EDNA J. TURNER,                                            PLAINTIFF,

V.              **MEMORANDUM OPINION AND ORDER**

JO ANNE BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                           DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 9, 21) and the plaintiff's motion to remand for failure to provide a complete administrative transcript (DE 5). The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion to remand and deny without prejudice the parties' motions for summary judgment.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a sixty-year-old female with a high-school education and has past relevant work ("PRW") as an accounts payable clerk and a human resources coordinator. AR 17. She alleges disability beginning on August 8, 2003, as a

result of degenerative disc disease, disc bulge/protusion on the thoracic spine, and a hairline fracture of the left foot. *Id*. The plaintiff filed a claim for Disability Insurance Benefits ("DIB") on January 26, 2004, which was denied initially and on reconsideration. AR 16. After a hearing held on August 31, 2005, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ found that the plaintiff's chronic back pain secondary to degenerative disc disease with degenerative changes, osteophytes, and disc bulges in the cervical, thoracic, and lumbar spine; gout of the left great toe; status post hairline fracture of left fourth metatarsal; and hypothyroidism were severe impairments. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. At Step 4, the ALJ found that the plaintiff was able to perform her PRW and therefore was not under a disability as defined by the Social Security Act. AR 22-23.

**III. Legal Analysis**

*A. The Plaintiff's Motion to Remand*

The plaintiff argues that this matter should be remanded to the Commissioner based on the numerous instances of the word "[INAUDIBLE]" in the transcript of her administrative hearing. She claims that these gaps in the hearing transcript preclude the court from performing an independent determination as to

3

whether the ALJ's findings were supported by substantial evidence. In opposing the plaintiff's motion, the Commissioner argues that the plaintiff has shown no prejudice due to the inaudible portions of the transcript, and that her motion to remand should therefore be denied. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that a remand for evidentiary gaps in the administrative record is warranted only when a claimant suffers "clear prejudice").

By the court's estimation, the transcript of the plaintiff's hearing before the ALJ contains over fifty instances of the word "[INAUDIBLE]." Two of these instances are noted as being nineteen and twenty-five seconds in duration. Further, at least four entire questions propounded by the ALJ are completely replaced by the word "[INAUDIBLE]." The majority of the gaps in the hearing transcript occur during the ALJ's examination of Vocational Expert ("VE") Betty Hale, the pertinent part of which is reproduced below:

> Q. If we assume a person of Ms. Turner's age, education, and experience, [INAUDIBLE] perform at a light exertional level, no climbing of ropes, ladders, or scaffolds; no crawling; occasional climbing of stairs or ramps; occasional stooping, crouching or working with hands overhead. Would such a person be able to perform any of Ms. Turner's past relevant work?
>
> A. It fits with the exertional level of the [INAUDIBLE] position based on her testimony, she [INAUDIBLE] with that [INAUDIBLE] crouching [INAUDIBLE] on [INAUDIBLE]. As it's described in the DOT, yes. She could [INAUDIBLE].
>
> Q. Sounds like at times that her lifting and carrying would also exceed the [INAUDIBLE].
>
> A. They, they [INAUDIBLE] depending on the [INAUDIBLE] file

[INAUDIBLE] that she was carrying.  She, she wasn't what is typically described in, in the DOT as an accounts payable clerk or [INAUDIBLE] clerk [INAUDIBLE] or at least the industry wherein she worked [INAUDIBLE] above and beyond what [INAUDIBLE] are, are typically associated with [INAUDIBLE].

Q. As described, to the best [INAUDIBLE].

A. Those are not [INAUDIBLE] full range of how she performed them.

Q. At her age, [INAUDIBLE] 56 [INAUDIBLE] --

A. Uh-huh.

Q. -- [INAUDIBLE] consider her skills at her age to be [INAUDIBLE for 25 seconds] [INAUDIBLE] consider her skills to be readily transferable to a broad range of market [INAUDIBLE]?

A. She's, she's been out of the work force for a couple of years at this point, just the age along with the [INAUDIBLE] I think that it's, there's an adjustment [INAUDIBLE] position and learning new skills and working in the environment and, and getting back to a full-time work schedule would be [INAUDIBLE] for her. [INAUDIBLE].

Q. She would be the same [INAUDIBLE] light or sedentary [INAUDIBLE].

A. [INAUDIBLE].

AR 396-98.  ALJ Reynolds stated in his opinion that Ms. Hale "testified that based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as an accounts payable clerk and human resources coordinator as those jobs are usually performed in the national economy."  AR 22.

The court finds that the gaps in the hearing transcript deprive the plaintiff of the opportunity for a full and fair judicial review.  As previously noted, the transcript contains over fifty instances of the word "[INAUDIBLE]," some of which

consume an entire question or answer in the transcript. Further, though no indication is given as to the length of most of these inaudible portions, two of them consume a combined 44 seconds. Thus, even aside from the other inaudible portions of the transcript, nearly one minute of an administrative hearing of indeterminate length[1] is unavailable for review.

The most serious problem caused by the inaudible gaps in the transcript is their effect on the review of the VE's testimony. In determining that the plaintiff could perform her PRW, ALJ Reynolds concluded that the VE had testified that the plaintiff's PRW was sedentary in exertion and that the plaintiff could perform her PRW as it was classified in the national economy. AR 22. The transcript indicates that the VE did indeed testify that the plaintiff's PRW was sedentary as defined in the national economy but "light as [the plaintiff] described it." AR 396. The remainder of the VE's testimony, however, is virtually incomprehensible. She appears to say that a person with the plaintiff's residual functional capacity could

---

[1] The transcript states that the hearing commenced at 3:19 p.m. on August 31, 2004, and ended at 2:44 p.m. on the same day. The hearing actually took place on August 31, 2005. Since the notice of the hearing was not mailed to the plaintiff until August 8, 2005, it could not have occurred on August 31, 2004. AR 25. Moreover, the times of commencement and conclusion are, on their face, inaccurate.

The plaintiff places great reliance on this erroneous report of the length of the hearing. In other circumstances, the court would attach little significance to what is more than likely a simple typographical error. In a situation where gaps of varying and unspecified length are found in the record, however, the total time consumed by the hearing is important, as it is suggestive of the degree of prejudice suffered by the plaintiff. The court therefore cannot conclude that the Commissioner's error in reporting the starting and ending time of the plaintiff's hearing is harmless.

perform her PRW, but this statement is followed by what seems to be a colloquy regarding the effect of the plaintiff's age, and her capacity to lift and carry, on her ability to work. Due to the inaudible gaps in the transcript, it is impossible to discern what the ALJ's questions and the VE's responses are. At one point, the transcript depicts the VE's testimony as follows: "getting back to a full-time work schedule would be [INAUDIBLE] for [the plaintiff];" thus, anyone wishing to know the VE's opinion as to whether the plaintiff can hold a full-time job is left in the dark. AR 398. Neither the court nor the plaintiff's counsel can adequately assess the ALJ's interpretation of the VE's testimony under these conditions.

The harm caused by the gaps in the hearing transcript is exacerbated by the fact that the plaintiff's current counsel is not the same attorney who represented her at the hearing. Thus, the current counsel does not know what relevant evidence is missing from the transcript. However, even if the plaintiff's counsel had been there, forcing him to rely on his memory of what occurred at the hearing would put him at a clear disadvantage in challenging the documented findings of the ALJ.

The court also rejects the Commissioner's argument that the plaintiff was not prejudiced by the gaps in the record because the medical evidence in this case, which is complete and legible, is sufficient to support her decision denying the plaintiff's benefits. This medical evidence, however, pertained only to the ALJ's determination of the plaintiff's residual functional capacity. The ALJ clearly relied

on the VE's testimony in determining that the plaintiff could perform her PRW. The omissions in the transcript of the VE's testimony gave the plaintiff no ground on which to challenge the ALJ's summation of that testimony, and, thus, no way to attack the ALJ's finding that she could perform her PRW. Moreover, the ALJ found that the plaintiff's testimony was not credible, *see* AR 25, a finding which may have been undermined had the plaintiff's counsel had the opportunity to view the missing portions of the transcript.

In sum, due to the incompleteness of the hearing transcript, the court is simply unable to say whether the ALJ's decision was supported by substantial evidence. The court therefore holds that the plaintiff suffered clear prejudice as a result of the gaps in the hearing transcript, and it will remand this case to the Commissioner for the taking of additional evidence and the reconsideration of the termination of benefits.[2]

---

[2]Although the plaintiff has argued for a remand pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner claims that a remand of this kind would properly be under sentence six. "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993). "Under sentence four, the court makes a final judgment, affirming, reversing, or modifying the Secretary's decision and may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings . . . ." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994). When there is not substantial evidence to support one of the ALJ's factual findings, the case can be remanded under sentence four for further consideration. *Id.*

The court has held that it is impossible to conclude whether the ALJ's decision is supported by substantial evidence and that a remand is thus necessary. On remand, the Commissioner may need to consider additional evidence to correct the defective hearing transcript. Finally, neither of the criteria for a sentence-six

*B. Cross-Motions for Summary Judgment*

Since the court has decided to remand this matter to the Commissioner for further proceedings, it need not consider the cross-motions for summary judgment and will deny them without prejudice.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to remand (DE 5) is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby **REMANDED** to the Commissioner for further proceedings in accordance with this opinion.

**IT IS FURTHER ORDERED** that the cross-motions for summary judgment (DE 9, 21) are **DENIED WITHOUT PREJUDICE**.

Signed on March 13, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

remand have been met in this case. For these reasons, the court finds that remand under sentence four is appropriate.